No. 24-2207

United States Court of Appeals
for the Federal Circuit

APPLE INC.,

*Appellant*,

v.

ZENTIAN LTD.,

*Appellee.*

*Appeal from the United States Patent and Trademark Office,*
*Patent Trial and Appeal Board, IPR2023-00036, IPR2023-01195*

## APPELLEE ZENTIAN LTD.'S RESPONSIVE BRIEF

Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
(310) 975-7074

Nevin M. Gewertz
Katherine E. Rhoades
Jessica R. Bernhardt
BARTLIT BECK LLP
54 W. Hubbard, Suite 300
Chicago, IL 60654
(312) 494-4400

*Counsel for Appellee Zentian Ltd.*

April 28, 2025

# PATENT CLAIMS AT ISSUE

## U.S. Patent No. 10,839,789

## Claim 1:

An acoustic coprocessor for processing data associated with an audio signal, comprising:

a first interface for receiving at least one feature vector, wherein the feature vector is determined from the audio signal;

an acoustic model memory for storing an acoustic model defining a plurality of acoustic states;

a calculating apparatus for calculating distances indicating a similarity between the at least one feature vector and respective acoustic states of the acoustic model read from the acoustic model memory; and

a second interface for sending at least one distance calculated by the calculating apparatus;

wherein the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit.

# CERTIFICATE OF INTEREST

Counsel for Appellee Zentian Ltd. certifies the following:

1.  The full name of every party represented by me is: Zentian Ltd.

2.  The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3 below) represented by me is: None/Not Applicable

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are: None/Not Applicable

4.  The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are: Peter Knops, Noroozi, PC

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary).

    Appellee Zentian Ltd. is unaware of any related cases under Federal Circuit Rule 47.5(a).

    Under Federal Circuit Rule 47.5(b), the decision in this appeal may directly affect, or be directly affected by, the following cases:

    *Zentian Ltd. v. Apple, Inc.*, W.D. Texas, No. 6:22-00122-ADA (transferred to N.D. Cal. in June 2023)

    *Zentian Ltd. v. Apple, Inc.*, N.D. of Cal., No. 23-cv-02921-TLT (transferred from W.D. Tex. in June 2023)

6.  All Organizational Victims and Bankruptcy Cases: None/Not Applicable


April 28, 2025          */s/ Kayvan B. Noroozi*
                             Kayvan B. Noroozi

                             *Counsel for Appellee Zentian Ltd.*

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................1

II.    JURISDICTIONAL STATEMENT ..................................................2

III.   STATEMENT OF ISSUES PRESENTED .......................................2

IV.   STATEMENT OF THE CASE ........................................................3

      A.      The '789 Patent .......................................................................3

           (1)     Speech Recognition Technology .....................................3

           (2)     The '789 Patent Claims a Novel Hardware Architecture Incorporating the Acoustic Model Memory on the Same Integrated Circuit as the Calculating Apparatus .........................5

      B.      The Prior Art ...........................................................................8

           (1)     The Smyth Patent Discusses the Calculating Apparatus and Acoustic Model Memory as Separate Structures .................8

           (2)     The Motorola DSP56000 (Kloker Reference) Contains Only a Small Amount of Usable Memory ................................10

           (3)     The Mozer Patent Teaches Loading Only Partial Acoustic Model Data into On-Chip Memory .........................12

           (4)     The Boike Patent Is Not Directed to Speech Recognition .....................................................................13

      C.      The Board Concluded that Apple Failed to Prove the "Single Integrated Circuit" Limitation Was Obvious .....................................14

           (1)     The Board Rejected Apple's Interpretation of Smyth and Its Reference to the Motorola DSP56000 .........................14

           (2)     The Board Found Apple Failed to Prove that a Person of Skill Could Have or Would Have Modified Smyth Based on Mozer ..........................................................................16

           (3)     The Board Recognized Apple's Combination for Claim 29 Incorporated Apple's Failures of Proof .............................20

V. SUMMARY OF THE ARGUMENT ...............................................................21

VI. ARGUMENT ..........................................................................................23

    A. Standard of Review ........................................................................23

    B. Apple Concedes the Board's Core Finding that Neither Smyth Nor Mozer Expressly Discloses the Disputed Limitation...................26

    C. Smyth Alone Does Not "Suggest" Integrating a Processor and Acoustic Model Memory on a Single Circuit ....................................27

        (1) Smyth's Reference to the DSP56000 Does Not Imply an On-Chip Acoustic Model Memory ...........................................29

        (2) The Board Considered the Embodiments and Teachings of Smyth that Apple Relied On................................................35

    D. Apple's Petition Relied on Mozer to Modify Smyth and "Fabricate" the Claim Elements on a Single Integrated Circuit .........39

        (1) Apple Failed to Support Its Petition's Theory that a POSA Could Fabricate an Integrated Circuit ..........................40

        (2) Apple's Reply Argument Was Untimely and Unsupported ................................................................................44

    E. The Board's Claim 29 Finding Does Not Violate the APA................50

VII. CONCLUSION........................................................................................54

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .........................................................................50

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023) ..........................................................................53

*Belden Inc. v. Berk-Tec LLC*,
805 F.3d 1064 (Fed. Cir. 2015) .........................................................................33

*Collabo Innovations, Inc. v. Sony Corp.*,
802 F. App'x 568 (Fed. Cir. 2020) ....................................................................45

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) ...................................................................... *passim*

*Dell Inc. v. Acceleron, LLC*,
884 F.3d 1364 (Fed. Cir. 2018) .........................................................................45

*Fanduel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) ............................................................. 52, 53, 54

*Gen. Elec. Co. v. United Techs. Corp.*,
IPR2017-00431, Paper 8 (P.T.A.B. June 26, 2017) ..........................................34

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) .........................................................................23

*In re Baxter Int'l, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) .........................................................................23

*In re Elsner*,
381 F.3d 1125 (Fed. Cir. 2004) .........................................................................23

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) .........................................................................23

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ............................................................. 28, 35, 50

*In re Suong-Hyu Hyon*,
   679 F.3d 1363 (Fed. Cir. 2012) ........................................................................23

*Intel Corporation v. Qualcomm Inc.*,
   21 F.4th 784 (Fed. Cir. 2021) .........................................................................49

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
   821 F.3d 1359 (Fed. Cir. 2016) ................................................................ *passim*

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ........................................................................................34

*Merck & Cie v. Gnosis S.P.A.*,
   808 F.3d 829 (Fed. Cir. 2015) ........................................................................23

*Millennium Pharms., Inc. v. Sandoz Inc.*,
   862 F.3d 1356 (Fed. Cir. 2017) ......................................................................31

*Par Pharm., Inc. v. TWI Pharm., Inc.*,
   773 F.3d 1186 (Fed. Cir. 2014) ......................................................................34

*Parus Holdings, Inc. v. Google LLC*,
   70 F.4th 1365 (Fed. Cir. 2023) .......................................................................35

*Pers. Web Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017) ........................................................................35

*Qualcomm Inc. v. Apple Inc.*,
   24 F.4th 1367 (Fed. Cir. 2022) ................................................................. 24, 45

*SAS Inst., Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) ....................................................................................38

*Sirona Dental Sys. GmbH v. Institut Straumann AG*,
   892 F.3d 1349 (Fed. Cir. 2018) ......................................................................28

*Uber Techs., Inc. v. X One, Inc.*,
   957 F.3d 1334 (Fed. Cir. 2020) ......................................................................43

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
   17 F.4th 155 (Fed. Cir. 2021) .........................................................................36

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) ................................................................46

**Statutes**

28 U.S.C. § 1295 .................................................................................................2

35 U.S.C. § 6 ......................................................................................................2

35 U.S.C. § 103 .................................................................................................44

35 U.S.C. § 112 .................................................................................................42

35 U.S.C. § 141 ...................................................................................................2

35 U.S.C. § 311 ..............................................................................................2, 43

35 U.S.C. § 312 .............................................................................................36, 44

35 U.S.C. § 316 .............................................................................................50, 52

**Rules**

37 C.F.R. § 42.5 ................................................................................................45

37 C.F.R. § 90.3(a)(1) .........................................................................................2

**Other Authority**

Office Patent Trial Practice Guide,
   77 Fed. Reg. 48,756 (Aug. 14, 2012) ...............................................................45

## STATEMENT OF RELATED CASES

No appeal from the same Patent Trial and Appeal Board proceedings between Apple Inc. and Zentian Ltd. on U.S. Patent No. 10,839,789 has previously been before this or any other appellate court.

The '789 patent is at issue in *Zentian Ltd. v. Apple Inc.*, No. 3:23-cv-02921 (N.D. Cal.), which may be directly affected by this Court's decision in this appeal.

The '789 patent was previously at issue in *Zentian Ltd. v. Apple Inc.*, No. 6:22-cv-00122 (W.D. Tex.). That case was transferred to the Northern District of California as case No. 3:23-cv-02921, identified above.

The '789 patent was previously at issue in *Zentian Ltd. v. Amazon.com, Inc.*, No. 6:22-cv-00123 (W.D. Tex.), which terminated November 20, 2024.

## I. INTRODUCTION

A patent challenger must prove unpatentability through actual evidence, not conjecture or speculation. Before the Board, Apple failed to do the former and relied on the latter.

Although Apple repeatedly asserted that integrated circuits with a processor and *some memory* were ubiquitous in the prior art, Appx25, the Board found that Apple had failed to either identify or prove obvious the "single integrated circuit" of the *challenged claims*, which requires an "*acoustic model* memory." Apple strains throughout its opening brief to manufacture a legal issue where there is none. Apple simply failed to prove by a preponderance of the evidence that its proposed combinations rendered obvious the "single integrated circuit" limitation of claims 1, 2, 4, 6-9, 24, and 29.

On appeal, Apple attempts the same sleight of hand. Apple emphasizes integrated circuits that include a processor and *some* memory, but not an *acoustic model* memory, as if that's good enough. Apple also retreats from what it clearly said in its Petition regarding a person of ordinary skill in the art being able to fabricate the integrated circuit of the claims. Both efforts fail in the face of the Board's detailed factual findings and substantial evidence that supports those findings. In sum, Apple asks this Court to re-weigh the record while applying

a standard of obviousness below what is required. Apple's arguments should be rejected.

## II. JURISDICTIONAL STATEMENT

The Board issued a final written decision on June 11, 2024, in case Nos. IPR2023-00036 and IPR2023-01195. Appx1-66. Apple appealed on August 12, 2024. Appx571-573; 37 C.F.R. § 90.3(a)(1).

The Board had jurisdiction over both proceedings under 35 U.S.C. §§ 6(b)(4) and 311. This Court has jurisdiction over Apple's appeals under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## III. STATEMENT OF ISSUES PRESENTED

1. Whether the Board correctly found that Apple failed to meet its burden to prove that Smyth alone rendered obvious the limitation "wherein the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit."

2. Whether the Board correctly interpreted Apple's Petition's proposed combination of Smyth and Mozer to require a person of ordinary skill to be capable of fabricating an integrated circuit and thus properly found Apple's other arguments untimely.

3. Whether the Board correctly found that Apple also failed to show by a preponderance of the evidence that its untimely proposed combination of Smyth

2

and Mozer rendered obvious the limitation "wherein the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit."

4.      Whether the Board's finding that Apple failed to prove claim 29 unpatentable is supported by substantial evidence and conforms to the Administrative Procedure Act.

## IV.      STATEMENT OF THE CASE

### A.      The '789 Patent

#### (1)      Speech Recognition Technology

In the early 2000s, speech recognition systems were ill-equipped to perform in a fast and power-efficient manner, nor could they facilitate the back-and-forth conversational interactions that users expect today with virtual assistants. Appx96 at 1:27-54. Zentian focused on developing specialized chip designs to enable speech recognition in cost-, space-, and power-constrained environments like mobile devices. *Id.* The '789 patent, titled "Speech Recognition Circuit and Method," is the result of this work and is directed to an improved speech recognition circuit. Appx3839 ¶ 27.

Speech recognition systems generally follow a multi-step process, as illustrated by Figure 16 of the '789 patent. Appx88.



When a user speaks, an audio front end (103) processor or circuit analyzes the energies and frequencies present in an audio stream and creates vectorized data elements that correspond to short slices of time. Appx101 at 12:55-57. "For each audio input time frame, the audio signal is converted into a feature vector." Appx101 at 12:58-59.

Next, the feature vectors are input into the "distance calculation" processor or circuit (104), whereby the multitude of quantities in each feature vector is compared (*i.e.*, "a distance is calculated" in speech recognition parlance) to the multitude of quantities in vectors of known sounds, also known as "states," stored in an "acoustic model" (105). Appx98 at 5:66-6:9. Based on those distance

4

calculations, a search process attempts to find the most likely sequence of words spoken from a given vocabulary (106). *Id.*

This appeal centers on the hardware architecture used to process distance calculations and store the acoustic model.

### (2) The '789 Patent Claims a Novel Hardware Architecture Incorporating the Acoustic Model Memory on the Same Integrated Circuit as the Calculating Apparatus

As the '789 patent explains, speech recognition systems use a variety of memory for a variety of purposes. For example, the system needs memory to store the feature vectors (Appx97 at 4:2-7; Appx107 at 24:65-25:5) and the acoustic model (Appx108 at 26:44-63), it uses a "results memory" to store distance calculations (*id.* at 26:15-31), buffers to pass data from the calculating circuit to the search stage (Appx98 at 6:9-23; Appx112 at 34:13-17), and it requires a memory to store the lexical model of words used in the search stage (Appx99 at 7:24-26).

An "acoustic model memory," as described by the '789 patent, stores the acoustic model. Appx108 at 25:44-46, 26:44-63. An acoustic model is a model of predetermined acoustic states, like a dictionary of sounds. Appx98 at 6:51-60. Each state in the acoustic model represents a sound in the recognizer's vocabulary. Appx102 at 13:22-33; *see also* Appx107 at 24:11-14.

"Acoustic Models may occupy many megabytes of storage space." Appx112-113 at 34:53-36:4. This is, in part, because even a small-vocabulary

speech recognition system designed to recognize just a few hundred words "would use most of the sounds likely in the English language," so the system would "still need the full acoustic model." Appx3380 at 76:7-18.

The '789 patent teaches that there are benefits to having the acoustic model stored in memory located on the same integrated circuit as the distance calculator. Appx108 at 26:44-51. Distance calculations can be computationally intensive, as each feature vector may be compared to each state of the acoustic model—for example, "one distance for each of the 8,000 states." Appx102 at 13:62-67; Appx108 at 25:42-44. But "on-chip" acoustic model memory "maximize[s] bandwidth and minimize[s] [the] power consumption of reading the entire Acoustic Model every frame," up to "50 to 100 times per second, depending on the system design." Appx108 at 26:44-51; Appx112 at 34:52-66.

Figure 17 below illustrates one potential architecture for a distance calculation accelerator with an acoustic model memory, where feature vectors are received via input 212, and the search stage reads distances from the result memories 201 and 202. Appx108 at 25:6-26:51. Figure 17 depicts four separate memories: FV Memory A 208 for storing feature vectors, the Acoustic Model Memory 205 for storing the acoustic model, and Result Memory A 201 and Result Memory B 202, for storing the calculated distances.



Claim 1 of the '789 patent claims an "acoustic coprocessor" for performing

distance calculations, an interface for receiving feature vectors, "an acoustic model

memory for storing an acoustic model defining a plurality of acoustic states," "a

calculating apparatus for calculating distances," and a second interface for sending

distances calculated by the calculating apparatus. Claim 1 specifies that "the

calculating apparatus and the acoustic model memory are fabricated on a single

integrated circuit." Dependent claims 2, 4, 6-9, and 24 likewise include the "single

integrated circuit" ("IC") limitation.

Although dependent claim 29 does not use identical language, it, too, claims

a combination of processors and memory fabricated on a single integrated circuit.

Specifically, claim 29 claims a speech recognition system where the acoustic

7

coprocessor, comprising a "calculating apparatus for calculating distances indicating a similarity between the at least one feature vector and at least one acoustic state of an acoustic model read from an acoustic model memory" (claim 10) and "one or more results memories configured to store the distances for each acoustic state of the acoustic model" (claim 17), is "fabricated on a single integrated circuit" with "at least one processor configured to . . . perform or initiate a speech recognition word search using one or more distances calculated by the acoustic coprocessor" (claim 28).

## B. The Prior Art

### (1) The Smyth Patent Discusses the Calculating Apparatus and Acoustic Model Memory as Separate Structures

Apple's primary reference, the Smyth patent,[1] is titled "Task-Constrained Connected Speech Recognition of Propagation of Tokens Only If Valid Propagation Path Is Present," and is directed to a "method and apparatus for applying grammar constraints to connected speech recognition," particularly for "task-constrained connected word recognition." Appx1006; Appx1113 at 1:14-21.

Smyth performs feature extraction (using feature extractor 33), distance calculations (using classifier 34), and identifies the most likely sequence of

---

[1] U.S. Patent No. 5,819,222 to Samuel Smyth, et al.

words (using sequencer 35), as illustrated in Figure 2 below. Appx1107; Appx1115 at 5:1-18.



Fig. 2

Smyth's classifier 34 comprises classifying processor 341 and state memory 342, as depicted in Figure 3. Appx1108; Appx1115 at 5:55-57.

Fig. 3



Apple mapped Smyth's classifying processor 341 to the '789 patent's claimed calculating apparatus and Smyth's state memory 342 to the '789 patent's

9

acoustic model memory. Appx21; Appx140; Appx3802 at 53:2-16. Apple's expert calculated that Smyth's state memory would require, at a minimum, 4.7 or 4.8 kilobytes of storage. Appx23; Appx3297-3301 ¶¶ 3-7; Appx3804 at 55:15-24.

Smyth discusses state memory 342 as a distinct structure from classifying processor 341. Appx17; Appx1115 at 5:55-67 ("[T]he classifier 34 comprises a classifying processor 341 and a state memory 342"). Figure 3 displays state memory 342 and classifying processor 341 as separate structures. Appx1108. And Smyth specifies that "classifying processor 341"—but not state memory 342 or the entire structure of classifier 34—"may be a suitably programmed digital signal processing (DSP) device," such as the Motorola DSP56000. Appx17; Appx1115 at 6:5-8, 5:49-53.

Smyth does not discuss integrated circuits. Nor does its specification mention *any* "on-chip" memory, much less an on-chip *acoustic model* memory.

### (2) The Motorola DSP56000 (Kloker Reference) Contains Only a Small Amount of Usable Memory

In its Petition, Apple relied on Smyth's reference to the Motorola DSP56000 as providing necessary details regarding the configuration of Smyth's classifier. Appx167; Appx1115 at 6:5-8, 5:49-53 (Smyth noting that "classifying processor 341" may be implemented on the Motorola DSP56000). A white paper titled "The Motorola DSP56000 Digital Signal Processor," written by Kevin L. Kloker, describes the DSP56000 in more detail. Appx168; Appx1133-1152.

Kloker establishes that the Motorola DSP56000 contains only a small amount of on-chip memory. Appx18; Appx23. Figure 2 of Kloker, annotated below, shows that the DSP56000 had a total memory size of only 512 words of RAM, which amounts to only 1.5 kilobytes of usable storage. Appx1136; Appx3844 ¶ 40; Appx23. Although the DSP56000 also includes ROM ("read-only memory"), that "program memory" is used for storing executable code and defining the processor's operation—not storing other information, like an acoustic model. Appx3844-3845 ¶¶ 41-42; Appx3384-3385 at 80:8-81:3; Appx23 (Board "finding that the ROM on the DSP56000 would not be available for storing the acoustic model, because it is used for storing code for specialized operations, and is not modifiable by a user of the DSP").



Figure 2. DSP56000 block diagram.

11

As Zentian's expert explained, the DSP56000's "on-chip memory is used for temporary storage and operation, but [is] meant to operate with off-chip memory." Appx3385 at 81:17-21. The DSP56000's 1.5 kilobytes of available RAM is much smaller than the 4.7-plus-kilobytes required for Smyth's state memory 342. Appx23.

### (3) The Mozer Patent Teaches Loading Only Partial Acoustic Model Data into On-Chip Memory

The Mozer patent[2] is titled, "Audio Recognition Peripheral System," and is directed to an "audio recognition peripheral system compris[ing] an audio recognition peripheral [and] a programmable processor such as a microprocessor or microcontroller." Appx3076.

Although Mozer teaches *some* memory on an integrated circuit with a processor (423), Mozer does not use an "*acoustic model* memory" as claimed in the '789 patent. Appx31. Instead, as illustrated in Figure 4, after feature vectors are extracted and ready for distance calculations performed by vector processor 423, an "external processor" (connected via interface controller 421) "loads both a first vector representation of the audio signal 425 and a second vector representing a template into the memory 460." Appx3085 at 10:17-21; *id.* at 9:22-30. The template vector is loaded from off-chip via the external processor. *Id.* As Apple's

---

[2] U.S. Patent No. 6,832,194 to Forrest S. Mozer, et al. Appx3076-3090.

expert testified, the "vector memory [460] is not the same as the full acoustic template memory. It's a smaller memory." Appx3906 at 31:15-21; Appx32.



FIG. 4

**(4)  The Boike Patent Is Not Directed to Speech Recognition**

In addition to Smyth and Mozer, Apple's proposed combination for claim 29 of the '789 patent relied on Boike's[3] disclosure of an integrated circuit. That patent, titled "Integrated Circuit Containing Multiple Digital Signal Processors," "relates to digital signal processing, and more particularly to integrated circuits containing multiple digital signal processing cores." Appx1120; Appx1123 at 1:6-8. Boike is "not directed to speech recognition." Appx30. The patent does not contain the words "speech" or "acoustic." Appx1120-1126. Accordingly, though

---

[3] U.S. Patent No. 6,959,376 to Mark Boike, et al. Appx1120-1126.

Boike discusses the presence of *some* memory on a DSP, it does not teach an

*acoustic model* memory fabricated on a single integrated circuit with a digital

signal processor, or any other processor.

### C. The Board Concluded that Apple Failed to Prove the "Single Integrated Circuit" Limitation Was Obvious

Apple petitioned for *inter partes* review of claims 1, 2, 4, 6-14, 16-18,

20-29, 35, 37-39, and 42-45. The Board instituted review of all challenged claims.

After considering the full record, the Board determined that Apple failed to meet

its burden with respect to claims 1, 2, 4, 6-9, 24, and 29, which the Board found

not unpatentable. Appx63-65.

### (1) The Board Rejected Apple's Interpretation of Smyth and Its Reference to the Motorola DSP56000

Claims 1, 2, 4, 6-9, and 24 all claim an "acoustic coprocessor . . . wherein

the calculating apparatus and the acoustic model memory are fabricated on a single

integrated circuit."[4] Appx114 at 38:55-39:2. The Board rejected Apple's

contention that Smyth alone taught or suggested "fabricat[ing]" the "calculating

apparatus and the acoustic model memory" on a "single integrated circuit" after a

---

[4] Claim 24's language differs slightly, but that difference does not affect the analysis. Appx115 at 40:26-31 (claim 24 claiming an "acoustic coprocessor" wherein "the acoustic model memory includes a plurality of storage locations within a static random access memory" and "wherein the SRAM and the calculating apparatus are fabricated on a single integrated circuit").

fulsome evaluation of Smyth's disclosure, Kloker's explanation of the DSP56000, and the testimony of both experts.

First, the Board considered the language of Smyth itself. The Board found that Smyth "in discussing classifier 34, distinguishes processor 341 from state memory 342 in stating that only processor 341, and not both processor 341 and state memory 342, may be located on the DSP." Appx17.

Then, the Board assessed the precise question Apple criticizes the Board for ignoring: whether Smyth's reference to the Motorola DSP56000 "at least suggests storing data—like the acoustic model its calculating apparatus needs to access— using [the DSP56000's] on-chip memory." *See* Apple Br. at 10. The Board found that it did not. Appx17-25.

The Board rejected as "inconsistent with Smyth's disclosure" Apple's expert's opinion that "[a] POSITA would have understood or at least found obvious that Smyth [and its reference to the DSP56000] teaches a single IC on which both classifier processor 341 and state memory 342 are fabricated." Appx17 (quoting Appx1022-1023 ¶ 165; Appx168). Instead, the Board credited Zentian's expert, who "persuasively explain[ed] that processor 341 and state memory 342 could not be fabricated on the same integrated circuit, because the design of the [Motorola DSP56000] for processor 341 does not include any memory that meets the requirements of state memory 342." Appx18. Although Apple disputed the

15

requisite size of Smyth's state memory 342, the Board found that Apple's own expert testified that Smyth's acoustic model memory would need to hold at least 4.7 kilobytes (Appx23; Appx30), and the Board found that Apple offered no evidence that Smyth disclosed an on-chip acoustic model memory that met that requirement. Appx20-25. The Board found that Apple did not rebut Zentian's evidence that the Motorola DSP56000 contained at most 1.5 kilobytes of available memory in RAM to store an acoustic model. Appx23.

The Board found that "Petitioner has not shown that processor 341 of Smyth and state memory 342 of Smyth, which Petitioner maps to the claimed 'acoustic model memory,' could have both been on the DSP of Smyth." Appx25. The Board considered the evidence Apple presented and found that Apple failed to prove that Smyth taught or suggested the single integrated circuit limitation.

**(2)     The Board Found Apple Failed to Prove that a Person of Skill Could Have or Would Have Modified Smyth Based on Mozer**

Apple also argued that, to the extent that Smyth alone did not disclose the "single integrated circuit" limitation, "[a] POSITA would have found it obvious and been motivated to modify Smyth to fabricate classifier processor 341 and state memory 342 of classifier 34 on a single integrated circuit according to Mozer's teachings." Appx170-171 (italics omitted). The Board rejected this ground as well.

As a preliminary matter, the Board found that the theory Apple proposed in its Petition would have required a person of ordinary skill in the art of *speech recognition* to have the capability to *fabricate* an integrated circuit. Appx27-28 (collecting citations to Apple's Petition). The Board agreed with Zentian's expert, however, that fabricating Smyth's processor 341 and state memory 342 onto a single integrated circuit was "beyond the level of ordinary skill in the art for a person in the field of speech recognition." Appx29. Apple does not challenge the Board's conclusion about the level of ordinary skill on appeal.

In its reply before the Board, Apple shifted its claim rather than support the Petition's theory that a person of ordinary skill in the art would have modified Smyth by fabricating an integrated circuit in view of Mozer's teachings. It argued that a person of ordinary skill could use the "known technique of utilizing a memory and a processor fabricated on a single integrated circuit" already because "it was within the POSITA's skillset to procure such hardware." Appx32; Appx378-379. The Board determined that Apple's new argument was untimely. Appx29-30. Together, the Board's conclusions about the scope of Apple's Petition, the level of ordinary skill in the art, and the untimeliness of Apple's remaining arguments were sufficient to sustain the Board's conclusion that Apple did not meet its burden.

The Board nonetheless proceeded to reject on the merits Apple's contention that using a prefabricated integrated circuit with an acoustic model memory was a "known technique." Appx29-30. Essentially, the Board concluded, Apple failed to prove that a person of skill could "procure" a "single integrated circuit" "wherein the calculating apparatus and the acoustic model memory are fabricated" prior to the '789 patent's priority date. Appx28 ("[T]he Petition did not map Smyth's state memory . . . to a memory already fabricated on an integrated circuit in the prior art.").

The Board considered Mozer's integrated circuit, as well as those disclosed in Apple's background references. It found that Mozer did not disclose an *acoustic model* memory of any size that was fabricated on a single integrated circuit with a calculating apparatus. Appx31. Apple failed to explain "how the memory of Mozer, which stores a vector representing a template, teaches the claimed acoustic model memory." Appx31 (citation omitted). Apple also did not show that the 4-kilobyte memory 460 on Mozer's integrated circuit could hold Smyth's 4.7-plus kilobyte state memory 342. Appx30. As for the background references, Apple could not establish that any taught an integrated circuit incorporating an acoustic model memory or disclosed a memory large enough to store Smyth's acoustic model. Appx30-31 (discussing Boike, Ozcelik, and Toyoda).

The Board did not limit its motivation-to-combine analysis to focus narrowly on memory size, as Apple now claims on appeal. Apple Br. at 12-13. The Board instead reasoned that because Mozer did not teach an integrated circuit with a calculating apparatus and acoustic model memory, any benefits flowing from use of Mozer's integrated circuit were necessarily achieved without fabricating the acoustic model with the calculating apparatus on the integrated circuit. Appx32. To the extent that Mozer and other references identified benefits to using *some* memory on-chip to hold *some* state vectors (not a full acoustic model), those benefits "are benefits that both Mozer and Smyth already have, without fabricating the calculating apparatus and the acoustic model memory on the same integrated circuit." Appx38.

The Board concluded that "[t]he Petition identifies only one integrated circuit that would have been able to include an 'acoustic model memory for storing an acoustic model defining a plurality of acoustic states' as claimed, which is the one that 'a POSITA would have been motivated . . . to fabricate,' which was beyond the level of ordinary skill." Appx38-39 (citation omitted). In other words, the Board found that Apple did not provide any evidence of an *existing* integrated circuit that would have met the claims, but instead could only rely on the contention that an ordinary speech recognition artisan would have been motivated to *fabricate* the claimed integrated circuit, which the evidence showed a person of

19

ordinary skill in the field of speech recognition could not have done. Apple thus failed to meet its burden to prove unpatentability based on the combination of Smyth and Mozer.

### (3) The Board Recognized Apple's Combination for Claim 29 Incorporated Apple's Failures of Proof

Claim 29 requires that an "acoustic coprocessor," comprising a "calculating apparatus for calculating distances indicating a similarity between the at least one feature vector and at least one acoustic state of an acoustic model read from an acoustic model memory" (claim 10), is "fabricated on a single integrated circuit" (claim 29) with "one or more results memories configured to store the distances for each acoustic state of the acoustic model" (claim 17), and "at least one processor configured to . . . perform or initiate a speech recognition word search using one or more distances calculated by the acoustic coprocessor" (claim 28).

Apple's Petition mapped Smyth's classifier 34 to claim 29's "acoustic coprocessor" limitation and Smyth's sequencer 35 to claim 29's "at least one processor." Appx197; Appx56. Apple contended that a person of skill would have implemented Smyth's classifier 34 and sequencer 35 on Boike's integrated circuit. Appx198-199; Appx56.

Of course, Smyth's classifier 34 includes *both* classifier processor 341 *and* state memory 342. Thus, according to Apple's combination, all of Smyth's classifier 34 must be "fabricated on a single integrated circuit." Because "the

20

Petition has not shown that any of the integrated circuits cited in the Petition would have had enough memory to include both classifier processor 341 and state memory 342," and "the Petition has not shown that fabricating an integrated circuit was within the level of ordinary skill," the Board reasoned that "the Petition does not show that the combination of Smyth, Mozer, Nguyen, Vensko, Comeau, and Boike teaches an 'acoustic coprocessor fabricated on a single circuit' as recited in claim 29." Appx56. The Board also found that Apple failed to prove that other elements of its combination, such as the state probability memory 353 encompassed in Smyth's state sequencer 35, would have fit on Boike's integrated circuit. Appx56-57.

Apple, as the petitioner, at all times bore the burden of proving invalidity by a preponderance of the evidence. Appx7; Appx21; Appx24. With claim 29—as with claims 1, 2, 4, 6-9, and 24—the Board correctly found that Apple fell short of meeting its burden. Appx56-57.

## V.     SUMMARY OF THE ARGUMENT

The Board correctly found that Apple failed to meet its burden to prove that the '789 patent's claimed "acoustic coprocessor . . . wherein the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit," was obvious based on the prior art. Apple attempts to obfuscate what it had to prove, implying that *some* memory present on the same integrated circuit as

21

a processor is enough. But, as the Board found, *some* memory is not the same thing as an *acoustic model* memory. *E.g.*, Appx18; Appx25; Appx28; Appx38.

The Board weighed the evidence and made several key factual findings that are supported by substantial evidence. First, the Board found that neither Smyth nor Mozer expressly teach an acoustic model memory on-chip with a calculating apparatus. Appx17; Appx32. Second, the Board relied on unrebutted expert testimony to find that a skilled artisan would not have understood Smyth's brief reference to the Motorola DSP56000 to imply that Smyth's acoustic model memory was fabricated on-chip with a calculating apparatus. Appx25. Third, the Board concluded that a person of ordinary skill in the art could not fabricate an integrated circuit—a fact Apple did not dispute before the Board and does not dispute on appeal. Appx29; Appx327-328. The Board's finding regarding the level of ordinary skill disposed of the Smyth–Mozer ground presented in the Petition. Appx27-29. Apple does not credibly challenge these key findings.

Finally, the Board noticed that the combination of prior art Apple relied on regarding claim 29 also required Apple to prove that Smyth taught fabricating its classifying processor and acoustic model memory on a single integrated circuit— which Apple failed to do in the context of claims 1, 2, 4, 6-9, and 24. Because Apple bears the burden of proof at all times, the Board correctly considered this failure of proof to find claim 29 not unpatentable.

## VI. ARGUMENT

### A. Standard of Review

Obviousness is a question of law, based on underlying factual findings. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1361 (Fed. Cir. 2012). This Court reviews *de novo* the ultimate legal question of obviousness, and each underlying factual finding for substantial evidence. *In re Elsner*, 381 F.3d 1125, 1127 (Fed. Cir. 2004); *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). These factual findings include the scope and the content of the prior art, the differences between the claimed invention and prior art, whether a skilled artisan would have been motivated to combine references, and objective considerations of nonobviousness. *In re Suong-Hyu Hyon*, 679 F.3d 1363, 1365-66 (Fed. Cir. 2012); *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015). In particular, this Court reviews the Board's determinations as to a motivation to combine and reasonable expectation of success for substantial evidence. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366-67 (Fed. Cir. 2016).

"It is for the Board to determine what grounds are being articulated in a petition and what arguments and evidence are being referred to in the responses and any replies." *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002 (Fed. Cir. 2023). The Board's assessment of the Petition and the parties' arguments are reviewed for abuse of discretion. *Id.* at 1003; *Henny Penny Corp. v. Frymaster*

*LLC*, 938 F.3d 1324, 1330 (Fed. Cir. 2019) (accord). The Board likewise has discretion to conclude that a particular argument raised in reply is untimely, and its determinations of untimeliness are reviewed for abuse of discretion. *Corephotonics*, 84 F.4th at 1002; *Qualcomm Inc. v. Apple Inc.*, 24 F.4th 1367, 1377 (Fed. Cir. 2022).

Although Apple acknowledges the general standard of review, it implies that *de novo* review should apply, citing to *Intelligent Bio-Systems*, 821 F.3d at 1366-67. Specifically, Apple argues that the Board misunderstood the "appropriate scope of the patent's claimed invention" by requiring evidence of an on-chip memory that could fit Smyth's acoustic model, or that a person of ordinary skill could personally fabricate an integrated circuit. Apple Br. at 34. Apple is incorrect for at least two reasons.

First, the Board's analysis was based on what Apple argued, and the Federal Circuit "review[s] the Board's assessments of what has been argued to and put before it in an IPR for abuse of discretion." *Corephotonics*, 84 F.4th at 1003.

Second, the language Apple cites from *Intelligent Bio-Systems* applies only to the reasonable-expectation-of-success argument Zentian made—that a person of ordinary skill would not have been capable of fabricating an integrated circuit based on the combination of Smyth and Mozer. The substantial evidence standard applies to the Board's determination that Smyth and Mozer did not disclose the

"single integrated circuit" limitation and that the ordinary artisan would not have been motivated to modify Smyth's disclosure on its own or in combination with Mozer. *Intelligent Bio-Sys.*, 821 F.3d at 1368 (upholding Board's decision finding no motivation to combine despite errors related to claim scope for reasonable expectation of success). Even with respect to Zentian's reasonable-expectation-of-success argument, the claim limitation and Apple's Petition make clear that the "the calculating apparatus and the acoustic model memory *are fabricated* on a single integrated circuit," and therefore the Board appropriately considered that inquiry. Apple Br. at 8; Appx115; Appx167-173.

Finally, the Board's decision that claim 29 is not unpatentable is also reviewed for substantial evidence. The burden to prove invalidity remains with the petitioner "at all times." *Corephotonics*, 84 F.4th at 1003. "Once an issue is fairly presented in a petition and made the subject of dispute by the patent owner's response, the Board is free to make its own factual findings grounded in the evidence presented to it, without being bound to choose between the specific positions the parties advocated." *Id.* Those "factual findings [are reviewed] for substantial evidence." *Id.* at 1001.

**B.    Apple Concedes the Board's Core Finding that Neither Smyth Nor Mozer Expressly Discloses the Disputed Limitation**

Apple searches for an appellate issue throughout its brief. But the simple reality is that Apple never demonstrated the prior art disclosed the "single integrated circuit" claim limitation.

The disputed claim limitation requires: "the calculating apparatus and the *acoustic model* memory are ***fabricated*** on a single integrated circuit." Apple's Petition consistently labeled the calculating apparatus in Smyth as the classifier processor 341, and the acoustic model memory as state memory 342. Appx16; Appx167-169. Apple further focused on the Motorola DSP56000 embodiment within Smyth as disclosing Smyth's processor 341 and state memory 342 on a single integrated circuit. *Id*. For Mozer, Apple mapped the calculating apparatus to vector processor 423 and the acoustic model memory to memory 460. Appx25; Appx167-171. Apple then argued that both Smyth and Mozer disclosed the disputed claim limitation:

> Because the Motorola DSP56000 provides for both a processor and memory to be fabricated thereon, *Smyth* teaches or renders obvious a single integrated circuit (IC) on which is fabricated both the classifier processor 341 and state memory 342. . . .

> To the extent Patent Owner contends *Smyth* does not teach or render obvious Claim 1(e), *Mozer* teaches a single integrated circuit on which a vector processor 423 (i.e., calculating apparatus) and memory 460 (i.e., acoustic model memory) are fabricated.

Appx167; Appx169.

Zentian demonstrated, however, that Apple's core contention was wrong: Neither reference expressly disclosed an *acoustic model* memory fabricated on a single integrated circuit with the calculating apparatus. Appx38.

The Board agreed with Zentian that neither Smyth nor Mozer disclosed the disputed claim element based on detailed factual findings:

> We agree with Patent Owner that Petitioner has not shown, by a preponderance of the evidence, that state memory 342 of Smyth is fabricated on the same integrated circuit as processor 341. . . .

> We agree with Patent Owner that Petitioner has not shown that Mozer discloses a calculating apparatus and an acoustic model memory fabricated on an integrated circuit as claimed. . . .

> Petitioner relies on Mozer to teach the benefits of fabricating a calculating apparatus and an acoustic model memory on the same integrated circuit, but Mozer does not teach a calculating apparatus and an acoustic model memory fabricated on the same integrated circuit.

Appx17; Appx31; Appx38. Apple never disputes the Board's findings related to affirmative disclosure on appeal.

### C. Smyth Alone Does Not "Suggest" Integrating a Processor and Acoustic Model Memory on a Single Circuit

Because Apple lacks actual evidence disclosing the "single integrated circuit" limitation, it argues that Smyth at least "suggests" the limitation. Apple Br. at 17. In Apple's view, the Board only found otherwise because it "restrict[ed] the prior art to only select embodiments rather than considering the art for all it teaches." *Id.* at 38-39. But the prior art does not "suggest" anything on its own—it

is Apple's burden to prove unpatentability. Apple's argument boils down to complaining that the Board was required to read into the prior art theories and arguments that Apple never set forth. This Court has repeatedly held otherwise. *Sirona Dental Sys. GmbH v. Institut Straumann AG*, 892 F.3d 1349, 1356 (Fed. Cir. 2018) (the Board may not "deviate from the grounds in the petition and raise its own obviousness theory."); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016); *Corephotonics*, 84 F.4th at 1001-02 ("As the Supreme Court has stated, in an IPR 'the petitioner's contentions, not the Director's discretion, define the scope of the litigation all the way from institution through to conclusion.' The IPR petition, thus, must provide an understandable explanation of the element-by-element specifics of the patentability challenges, including the identification of particular portions of prior art on which the petitioner is relying." (citations omitted)).

As demonstrated below, each of Apple's arguments fails because each improperly faults the Board for relying on Apple's own theories. First, Apple argues that the Board "erred in imposing a memory-capacity requirement" not present in the '789 patent's claims. In doing so, Apple tries to dodge the fact that the Board only considered the size of Smyth's acoustic model memory to elucidate precisely what Smyth would "suggest" to a person of ordinary skill in the art. Second, Apple argues that the Board wrongly focused on exemplary embodiments.

28

But this ignores that Apple relied exclusively on those embodiments in its

Petition, which must guide the Board's analysis. This Court should reject

Apple's arguments.

### (1) Smyth's Reference to the DSP56000 Does Not Imply an On-Chip Acoustic Model Memory

It was Apple's job, not the Board's, to make the arguments and provide

expert evidence of what the prior art taught. On appeal, Apple repeatedly asserts

that a processor with mere "memory" on the same integrated circuit is enough to

satisfy the obviousness standard. Apple states:

> The teachings of Smyth thus are straightforward. Smyth teaches a single unit (classifier) integrating a calculating apparatus (classifier processor) and acoustic model memory (state memory); it identifies one commercially available device with a processor and integrated on-chip memory; and it makes clear that 'similar devices' could be used. Those teachings are more than enough to disclose—or at least suggest—to those in the field using a single integrated circuit containing both Smyth's classifier processor and its state memory.

Apple Br. at 20.[5]

---

[5] Notably, Apple provides argument, but no citations to record evidence. Indeed, throughout the sections on what the prior art "suggests" and considering the prior art "for all it teaches," Apple cited to its expert Mr. Schmandt only once for the proposition that the DSP56000 "provides both memory and a processor fabricated on a single integrated circuit." Apple Br. at 19 (citing Appx1022-1023; Appx953-961).

But Apple's argument is neither factually accurate nor consistent with what the claims require. No matter how many times Apple repeats that processors had on-chip memory, it cannot change the fact that claim 1 requires that an "*acoustic model* memory" be on the same integrated circuit as the calculating processor, not just *some* memory. This is where Apple fell short before the Board, and where it again falls short on appeal.

As a threshold matter, the evidence proved that Smyth's state memory is *not* "integrat[ed]," as Apple argues, with its classifier processor on a single chip. Appx17. Smyth does not discuss integrated circuits or mention "on-chip" memory. Unlike the '789 patent, Smyth never articulates any advantages to placing an acoustic model memory on the same integrated circuit or "chip" as a processor. Yet despite the lack of any indication that Smyth contemplated fabricating classifying processor 341 and state memory 342 on the same integrated circuit, Apple's Petition relied on Smyth's brief reference to the Motorola DSP56000 to argue that "[b]ecause the Motorola DSP56000 provides for both a processor and memory to be fabricated thereon, Smyth teaches or renders obvious a single integrated circuit (IC) on which is fabricated both the classifier processor 341 and state memory 342." Appx167. Apple provided no rationale—other than the mere presence of *some* memory on the Motorola DSP56000—to support this contention.

The Board carefully considered and then rejected Apple's argument that a person of ordinary skill could read Smyth and understand it to disclose "the calculating apparatus and the acoustic model memory . . . fabricated on a single integrated circuit." First, the Board found that "Smyth itself in discussing classifier 34, distinguishes processor 341 from state memory 342 in stating that only processor 341, and not both processor 341 and state memory 342, may be located on the DSP." Appx17; *see also* Appx1115 at 6:5-8, 5:49-53. Apple now attempts to undermine the Board's reading of Smyth by arguing that "Smyth never says to locate its state memory on a *separate* integrated circuit from its classifier processor or discloses such an embodiment." Apple Br. at 20. Apple cannot rely on what the prior art *does not say* for purposes of obviousness. *See Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1364 (Fed. Cir. 2017) (reversing district court determination of obviousness where, although elements were "generally known," "the prior art does not teach or suggest" that they should be combined to solve a problem in the art). Rather, it must show with record evidence how the prior art would have led the person of ordinary skill to conclude the claims are obvious. Apple has not done so.

Next, the Board concluded that the existence of some on-chip memory on the referenced DSP56000, does not teach the presence of an acoustic model memory as required by the '789 patent. Appx17 (finding Apple's theory

31

"inconsistent with Smyth's disclosure"). To do so, the Board considered evidence submitted by both parties about the attributes of the only "acoustic model" that Apple mapped to the "acoustic model memory" (including the acoustic model's size in kilobytes), as well as the attributes of the only "integrated circuit" Apple relied on for its Smyth-only theory (including the size of the circuit's on-chip memory). Because the claims require an *acoustic model* memory fabricated on the same integrated circuit as the calculating apparatus, and not just *some* memory, the Board fairly considered these attributes.

Specifically, the Board found that Smyth's reference to the DSP56000 did not imply an on-chip acoustic model memory because a person of ordinary skill reading Smyth would understand that Smyth's state memory 342 could not fit and therefore could not be implemented in the on-chip memory of the Motorola DSP56000. Appx17-18. Apple did not rebut Zentian's evidence that the DSP56000 had only 1.5 kilobytes available to potentially store an acoustic model. Appx23 ("We agree with Patent Owner and rely on Dr. Anderson's unrebutted supporting testimony in finding that Smyth's DSP contained at most 1.5 kilobytes of available memory in RAM to store Smyth's state memory 342."). The Board also concluded that the smallest amount of storage required for Smyth's state memory that was supported by evidence was 4.7 kilobytes. Appx23 ("We agree with Patent Owner that the 1.5 kilobytes of RAM available on the DSP56000 could not store Smyth's

acoustic model, even accepting Mr. Schmandt's testimony that Smyth's acoustic model requires 4.7 kilobytes of memory."); Appx3297-3301 ¶¶ 3-7; Appx3804 at 55:15-24.

Apple vigorously litigated these points; its reply brief was replete with argument headings such as "The Motorola DSP56000's Memory Is Sufficient to Store Smyth's 'Abbreviated Model'" and "Smyth's Memory Size Is Sufficient." Appx363; *see also* Appx18 ("Petitioner, in its Reply, contends that . . . the memory of Smyth's DSP is sufficient to store Smyth's acoustic model" (citing Appx366-375)). Apple cannot now complain that the Board erred in rejecting its arguments after Apple squarely put the argument before the Board.

This case is not analogous to *Belden Inc. v. Berk-Tec LLC*, 805 F.3d 1064 (Fed. Cir. 2015), where the Board erred in its analysis of the prior art's focus on insulated jackets where the claim language had no such requirement. Here, the Board was not reading "unclaimed requirements" into the '789 patent's claims; the '789 patent claims clearly require an "acoustic model memory" (not just *some* memory). The Board properly considered the size of the DSP56000's memory insofar as it needed to make a factual finding regarding what Smyth would teach (or suggest) to a person of ordinary skill.

At base, Apple's appellate argument that Smyth "suggests" the disputed limitation boils down to pure hindsight. Apple "suggests" that since *individual*

33

elements, (1) a calculating apparatus, (2) an acoustic model memory, and (3) single integrated circuits, were known, it was necessarily "obvious" to arrive at the claimed invention. But it is blackletter law: "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007); *see also Gen. Elec. Co. v. United Techs. Corp.*, IPR2017-00431, Paper 8 at 18 (P.T.A.B. June 26, 2017) ("[T]he mere disclosure in the prior art of each limitation of a claim, in isolation, is not sufficient to establish the obviousness of the combination.").

According to *KSR*, it is "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 550 U.S. at 418. "The presence or absence of a motivation to combine . . . is a pure question of fact," reviewed for substantial evidence. *Intelligent Bio-Sys.*, 821 F.3d at 1366 (quoting *Par Pharm., Inc. v. TWI Pharm., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014)). Apple tries pointing to Zentian's expert testimony that the Motorola DSP56000 included "memory on the chip so that you could do some operations more quickly." Apple Br. at 20 (citing Appx3383 at 79:11-14). Apple relies on this to argue that "skilled artisans understood the benefits of using on-chip memory." *Id.* at 21. Again, Apple conflates some on-chip memory with an on-chip acoustic model memory. Some

memory is not enough. As the Board observed, Zentian's expert "testified that the teachings of the '789 patent itself, namely, putting an *acoustic model* memory on the same integrated circuit as a calculating apparatus, were unknown in the prior art." Appx19 (emphasis added).

To satisfy its burden, a petitioner must "articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016); *see also Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017) ("[A] clear, evidence-supported account of the contemplated workings of the combination is a prerequisite to adequately explaining . . . that a relevant skilled artisan would have been motivated to make the combination."). That is precisely where Apple failed before the Board, and where it also fails on appeal.

### (2) The Board Considered the Embodiments and Teachings of Smyth that Apple Relied On

Similar to its argument that the Board failed to consider what Smyth "suggests," Apple argues that the Board failed to consider "Smyth as a whole." Apple Br. at 24. Apple claims that the Board "limited its analysis to a subset of the models and hardware Smyth expressly discloses and refused to consider everything Smyth teaches 'by way of technology.'" *Id.* at 25-26. To the contrary, the Board appropriately considered the disclosures Apple relied on. *See Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1372 (Fed. Cir. 2023) ("[T]he Board should not be

forced to "play arch[a]eologist with the record.' . . . 'A brief must make all arguments accessible to the judges.'" (citations omitted)).

Apple goes so far on appeal to argue that the "Board's errors also cannot be pinned on Apple based on the Board's citations to the petition." Apple Br. at 28. This argument rings hollow when "it is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.'" *Intelligent Bio-Sys.*, 821 F.3d at 1369 (quoting 35 U.S.C. § 312(a)(3)).

Apple specifically faults the Board for not considering allegedly smaller acoustic models. Apple Br. at 27.[6] But the Board did evaluate this argument and found Apple presented no evidence that these purportedly smaller acoustic models were disclosed by Smyth or would meet the limitations of the '789 patent's claims. Appx20. Considering the idea of an acoustic model with "as few as two" acoustic states, the Board found that Apple failed to "provide evidence or argument, either

---

[6] Apple also points to the '789 patent's teaching that an acoustic model "may be optionally stored in a compressed format" to fit within an acoustic model memory. Apple Br. at 23 (quoting Appx97 at 4:49-50). The Court should disregard this argument because Apple never advanced it before the Board. Additionally, "[t]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight. What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art." *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 165 (Fed. Cir. 2021).

in the Petition or in the Reply, to show that only two acoustic states of Smyth's state memory 342 would define an acoustic model as claimed." Appx20. As for Smyth's "abbreviated model for recognizing digits," Apple Br. at 27, Apple presented no evidence that a person of skill would understand that it could be viably stored on-chip on the DSP56000. Appx24. The Board found that Apple "does not allege, let alone support with evidence, that 1.5 kilobytes of memory would have been sufficient to store the abbreviated acoustic model. . . . Petitioner had the burden of identifying evidence to support its challenge and did not do so." Appx24. Notably, Apple's expert's supplemental declaration does not even mention a two-state or abbreviated model. *See* Appx3294-3304.

Apple also complains that the Board focused its analysis on Smyth's state memory 342 and the Motorola DSP56000's integrated circuit, because these were the components that Apple mapped to the '789 patent's "acoustic model memory . . . fabricated on a single integrated circuit" with the "calculating apparatus." Apple Br. at 28-29. In the Patent Owner Response, Zentian made clear that the Petition relied on "Smyth's processor 341 and Smyth's state memory 342, and not on any other processors or memories from any other references." Appx341. Apple could have disputed this point during the IPR and specifically pointed to some other processor or combination in the Petition, but Apple never did.

Instead of citing to specifics now, Apple falls back on vague references to "similar devices" to the DSP56000 and disclosure of individual claim elements in isolation as "more than enough to disclose—or at least suggest—to those in the field" the disputed claim limitation. Apple Br. at 19-20. Apple never specifies what "similar devices" Smyth discloses that might bear on the obviousness inquiry, other than the DSP56000, which the Board extensively considered and was the sole device that Apple attempted to map to the claims. The Board's focus was not error; to the contrary, Apple's Petition "define[s] the scope of the litigation all the way from institution through to conclusion." *Corephotonics*, 84 F.4th at 1001 (quoting *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1357 (2018)).

Thus, on appeal and after failing to prove obviousness based on the specific combination cited in the Petition, Apple cannot point to the Board's failure to look at "broader teachings" and other hardware not specifically identified in the combination at issue as if that is somehow error. The Petition always guides the analysis, and it is a straightforward exercise where Apple made its arguments and failed. *Intelligent Bio-Sys.*, 821 F.3d at 1369 ("[Petitioner] made a clear argument as to why a person of ordinary skill would be motivated to combine the prior art references at issue and [Patent Owner] demonstrated the error in that argument, which the Board credited. This factual finding by the Board is supported by

substantial evidence. The Board did not err in finding that the grounds of invalidity described in [Petitioner's] petition were not established.").

### D. Apple's Petition Relied on Mozer to Modify Smyth and "Fabricate" the Claim Elements on a Single Integrated Circuit

Apple's Petition presented a single alternative to its obviousness theory based on Smyth alone: that the person of ordinary skill in the art would have "been motivated to modify Smyth *to fabricate* classifier processor 341 and state memory 342 on a single integrated circuit according to Mozer's teachings." Appx25-26 (emphasis added) (quoting Appx170-171). The Board specifically relied on Apple's own framing of its theory in the Petition. *Id.* Apple ultimately failed to support the theory advanced in its Petition with record evidence.

Apple now claims that the Board erred, essentially arguing that it never made those statements in the Petition. On appeal, it focuses exclusively on an argument that it made for the first time in its reply brief to the Board: Apple switched theories to argue that its combination relied on integrated circuits that were *already fabricated. Id.* The Board found that argument untimely, as well as unsupported. Appx28-29.

Because Apple abandoned the position it took in its Petition, and the Board's decision to reject Apple's new theory is supported by multiple grounds, its appeal must fail.

**(1) Apple Failed to Support Its Petition's Theory that a POSA Could Fabricate an Integrated Circuit**

The Board "understood Petitioner's theory based on the combination of Smyth and Mozer to include *fabricating* an integrated circuit." Appx27 (emphasis added). It made this clear in its Institution Decision, which granted institution because "[o]n this record, [the Board was] sufficiently persuaded . . . that fabricating a single integrated circuit that includes a calculating apparatus and an acoustic model memory . . . was within the level of ordinary skill." Appx294.

When Zentian challenged whether fabricating a circuit was within the level of ordinary skill, Apple did not even try to argue that it was. *See* Appx378-379. Apple's failure is particularly egregious because the Board flagged the issue in its Institution Decision. Appx27-28. Apple never explains why it chose not to litigate the question when it had full notice this was a contested issue. Instead, Apple gambled that it never had to, and raised belated arguments about how its Petition should be read. The Board rejected those arguments and concluded that "the Petition's combination requires fabricating Smyth's processor 341 and state memory 342 onto a single integrated circuit, which was beyond the level of ordinary skill in the art for a person in the field of speech recognition." Appx29. Apple does not challenge the Board's finding that a person of skill could not fabricate an integrated circuit. That should be the end of the inquiry.

Apple's appeal instead contests the Board's decision that its Petition required a person of skill to be able to fabricate an integrated circuit. But it is the Board's role to "determine what grounds are being articulated in a petition," and this Court will "review the Board's assessments of what has been argued to and put before it in an IPR for abuse of discretion." *Corephotonics*, 84 F.4th at 1002-03.

The Board's interpretation of Apple's Petition here was well-founded. As the Board explained:

> Our understanding [of Apple's theory] was based on the Petition's multiple contentions that a person of ordinary skill would have found it obvious to fabricate Smyth's processor and state memory on a single integrated circuit. *See* Pet. 41-44. For example, the Petition contends that "[a] POSITA would have found it obvious . . . *to fabricate* [Smyth's processor and state memory] on a single integrated circuit" (Pet. 41-42 (emphasis added)); "a POSITA would have understood and found [it] obvious . . . *to fabricate* a calculating apparatus and acoustic model memory on a single integrated circuit" (Pet. 42 (emphasis added)); "[s]uch a use of a known technique of *fabricating* a memory and processor on a single integrated circuit" (*id*. (emphasis added)); "it would have been obvious to modify Smyth *to form* the classifier processor and associated memory on a single IC" (Pet. 43 (emphasis added)); "it was well known in the prior art *to fabricate* a single integrated circuit" (Pet. 43-44 (emphasis added)); "[t]hus, a POSITA would have been motivated . . . *to fabricate* [Smyth's processor and state memory] on a single integrated circuit" (Pet. 44 (emphasis added)). . . .
>
> [W]hen discussing the combination of a processor and an acoustic model memory on an integrated circuit, the Petition used the verb "to fabricate" four times in the future tense and once in the present tense, as well as the verb "to form" once in the future tense. The Petition did not use the past tense phrase "were already fabricated" as alleged in the Reply.

Appx27 (emphasis in original) (citing Appx170-173).

Apple now argues that this analysis "untethers the obviousness analysis from the scope of the claims." Apple Br. at 35-36.[7] There can be no dispute, however, that the claims require a calculating apparatus and acoustic model memory be "fabricated on a single integrated circuit." For this reason, Apple argued in its Petition that the person of ordinary skill would have found it obvious to fabricate both claim elements (the calculating apparatus and acoustic model memory) on the single integrated circuit. Appx170-173. Apple or its expert could have made clear in the Petition that the person of ordinary skill would not be required to make such a fabrication on his or her own and explained nevertheless how the claim limitation would have been obvious, but they did not. The Board justifiably relied on the grounds that Apple articulated in its own words.

Apple also argues that the Board somehow misinterpreted Apple's Petition because the '789 patent offers no details about fabricating an integrated circuit. Apple Br. at 37-38. As an initial matter, invalidity challenges based on a patent's written description, *see* 35 U.S.C. § 112, fall outside the scope of *inter*

---

[7] Apple chastises the Board for focusing on the verb tenses Apple selected, complaining that the claims "are worded passively, merely requiring a calculating apparatus and memory that 'are fabricated on a single integrated circuit.'" *Id.* at 35. Now is not the time to argue verb tenses or claim construction, and the parties both agreed that no claim construction was necessary. Appx9-10; Appx134; Appx240.

*partes* review proceedings, 35 U.S.C. § 311(b). Apple's argument is thus not appropriate here.

Additionally, Apple's reliance on *Uber Techs., Inc. v. X One, Inc.*, 957 F.3d 1334, 1339 (Fed. Cir. 2020), is misplaced. In *Uber*, the parties identified "only these two methods of transmitting location information to a mobile device"; those methods "represent[ed] 'a finite number of identified, predictable solutions' to a design need that existed at the relevant time, which a person of ordinary skill in the art 'ha[d] good reason to pursue.'" *Id.* at 1339. Here, Apple has never shown that there are a finite number of "known methods" in the prior art to achieve "the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit."[8]

"It is of the utmost importance that petitioners in the IPR proceedings adhere to the requirement that the initial petition identify 'with particularity' the 'evidence that supports the grounds for the challenge to each claim.'" *Intelligent Bio-Sys.*,

---

[8] For example, the '789 patent teaches that an acoustic model "may be optionally stored in a compressed format" to fit within a particular memory. Appx97 at 4:49-50. Apple never identified any prior art that taught data compression as part of its combination related to the "single integrated circuit" limitation. Indeed, its prior art dealt with on-chip storage limitations differently. *Cf.*, *e.g.*, Appx1114 at 3:23-35; Appx1117 at 10:3-8, 10:45-50 (Smyth teaching pruning the number of calculations performed to achieve "reduction in storage requirements," at the cost of accuracy); Appx3085 at 9:32-46 (Mozer teaching that template vectors are stored in external memory and only some loaded on-chip for distance calculations); Appx3906 at 31:15-21 ("[Mozer's] vector memory [460] is not the same as the full acoustic template memory. It's a smaller memory.").

821 F.3d at 1369 (quoting 35 U.S.C. § 312(a)(3)). Far from imposing a "higher standard of obviousness" contrary to 35 U.S.C. § 103, *cf.* Apple Br. at 36, the Board was bound by § 312(a)(3) to follow the arguments that Apple's Petition put forward. Because Apple did not show that fabricating an integrated circuit was within the level of skill for a person within the field of speech recognition, it failed to prove by a preponderance of the evidence that the combination of Smyth and Mozer taught the "single integrated circuit" limitation. Appx29-30.

### (2)    Apple's Reply Argument Was Untimely and Unsupported

After Apple abandoned its Petition's theory that a POSA would have been motivated "to modify Smyth to fabricate classifier processor 341 and state memory 342 on a single integrated circuit according to Mozer's teachings," Appx170-171, it shifted to arguing that a POSA would "procure such hardware," Appx379. In other words, Apple's new theory required it to prove that an integrated circuit sufficient to support a calculating apparatus and acoustic model memory on the same chip existed on the market prior to the '789 patent's priority date. Appx30; Appx37-39. The Board concluded that Apple's new theory was both untimely and unsupported. *Id.*

First, with regard to timeliness, this Court reviews Apple's arguments on appeal under an abuse of discretion standard. *Intelligent Bio-Systems*, 821 F.3d at 1367 ("Decisions related to compliance with the Board's procedures are reviewed

for an abuse of discretion."). The Board's authority to consider timely arguments, and to find untimely arguments waived, is a matter of compliance with 37 C.F.R. § 42.5 and the Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012). *See Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018). Therefore, the Board's decision to find an argument untimely, as it did in this case, is reviewed for an abuse of discretion. *See id.* (applying abuse of discretion standard to Board's refusal to consider "untimely argument"); *Collabo Innovations, Inc. v. Sony Corp.*, 802 F. App'x 568, 571 (Fed. Cir. 2020).

"In particular, the Board has discretion to determine 'whether a [p]etition identified the specific evidence relied on in a [r]eply and when a [r]eply contention crosses the line from the responsive to the new.'" *Corephotonics*, 84 F.4th at 1002; *Qualcomm*, 24 F.4th at 1377 (holding that "Apple failed to show that the Board abused its discretion in determining that Apple's [argument] . . . was untimely raised for the first time on reply."). "Unlike district court litigation – where parties have greater freedom to revise and develop their arguments over time, . . . the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute." *Corephotonics*, 84 F.4th at 1002 (citation omitted). "The Board is not permitted to entertain '[s]hifting arguments' but must, instead, reject any 'entirely new theory of *prima facie* obviousness absent from the

45

petition,' if the petitioner attempts to inject such a theory into the proceeding post-petition." *Id.* (citations omitted).

As discussed in Section VI.D.1 above, the Board's interpretation of Apple's Petition was well-founded; it did not abuse its discretion when it determined that Apple's already-fabricated theory was untimely. *See* Appx29 (considering the issue). This Court's decision in *Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272 (Fed. Cir. 2017), is instructive. As in this case, the petitioner presented a "conclusory" theory in its petition. *Id.* at 1286. "After [the patent owner] pointed out the flaws of this position, [the petitioner's] ensuing arguments to the Board and to us effectively abandoned its petition in favor of a new argument." *Id.* The court confirmed that "[s]hifting arguments in this fashion is foreclosed by statute, our precedent, and Board guidelines," and thus found "no error in the Board declining to engage such an argument here." *Id.* at 1286-87.

Second, the Board correctly found that Apple's new theory was unsupported by the evidence. Appx30-38. Apple's arguments to the contrary again conflate the claimed "acoustic model memory" with any memory. *E.g.*, Apple Br. at 30-31 (arguing that Mozer "adds an express disclosure of combining another exemplary calculating apparatus and *associated memory*" (emphasis added)); *id.* at 11 (arguing "it is undisputed that integrated circuits with both a processor and *on-board memory* were well-known" (emphasis added)). But the claim does not recite

46

"associated memory" or "on-board memory," as Apple argues. *Id.* The claims require an "acoustic model memory," which Apple knows is something quite different and requires certain features.

Apple does not dispute that Mozer's on-chip memory 460 is not an "acoustic model memory" like the '789 patent's claims require. *Id.* at 30-31; *see also* Appx31-32 (finding that Apple's expert agreed that "Mozer does not teach a single integrated circuit on which 'the calculating apparatus and the acoustic model memory are fabricated' as recited in claim 1."). It is smaller than Mozer's full acoustic model memory. Appx31-32; Appx3906 at 31:15-21. Apple also does not claim that the only "acoustic model" it identified—Smyth's state memory 342— could fit on Mozer's integrated circuit. *Cf.* Apple Br. at 31-33. *See* Appx30 (finding Smyth's 4.7-plus kilobyte state memory could not fit on Mozer's 4-kilobyte memory 460). Instead, Apple vaguely argues that "[g]iven the widespread use of integrated circuits combining a processor and memory, persons of ordinary skill in the art would have reasonably expected success in applying that same approach to Smyth's teachings." *Id.* at 33. Again, Apple conflates the existence of some memory on an integrated circuit with a processor with the claimed "calculating apparatus and the acoustic model memory . . . fabricated on a single integrated circuit." Moreover, Apple obfuscates what it means by "that same approach." It cannot be the approach of fabricating an integrated circuit—which

was outside the skill of a POSA. Apple does not specify what "approach" it means on appeal.

Before the Board, however, Apple was clear that a POSA would have to buy a preexisting integrated circuit with a processor and sufficient memory to store an acoustic model. Appx379 ("The *Smyth-Mozer* combination would not have been beyond the skill of a POSITA because integrated circuits with memory and a processor fabricated thereon were commonly available. . . . Ordinary artisans in the field of speech recognition are simply consumers of integrated circuits fabricated by others."); Appx389 ("If a POSITA can be a consumer of an IC fabricated by others, then a POSITA does not need to be able to perform the actual fabrication."). Thus, prompted by Apple's shifting argument, the Board considered whether the Petition identified an available "integrated circuit that would have been able to include an 'acoustic model memory for storing an acoustic model defining a plurality of acoustic states' as claimed." Appx39. As discussed, the only "acoustic model" that Apple identified was Smyth's, and Apple's evidence indicated that it required at least 4.7 kilobytes of memory. *See supra* Section VI.C. The Board thus considered whether any of the integrated circuits Apple identified in the prior art were sufficient to store Smyth's acoustic model. Appx30-39. Apple failed to prove that any were sufficient, including because none were proven to

include a large enough memory. *Id.* On appeal, Apple does not challenge this factual finding.

Nonetheless, Apple now complains that the Board "thought teachings about the benefits of integrating memory and processors on a chip were insufficient." Apple Br. at 40. It relies on *Intel Corporation v. Qualcomm Inc.* for the idea that a "generic" motivation like the one Apple advances "is not inherently suspect." 21 F.4th 784, 797 (Fed. Cir. 2021). *Intel*, however, actually supports the Board's finding here. In *Intel*, the petitioner's "expert indicated precisely *how* and why a skilled artisan would have combined the references." *Id.* (emphasis added). But the "how" is precisely where Apple fell short in this case. As the Board noted, "to the extent that the advantages from a processor and a memory fabricated on the same integrated circuit were known, such advantages by themselves do not show that any of the prior art integrated circuits relied on in the Petition would have been able to store Smyth's state memory," and "Petitioner has not shown that using the prior art elements relied on in the Petition according to their established functions would have resulted in 'the calculating apparatus and the acoustic model memory are fabricated on a single integrated circuit' as recited in claim 1." Appx35; Appx38.[9] Because Apple "fails to explain why a person of ordinary skill in the art

---

[9] The Board also spent several pages analyzing the purported motivations to combine that Apple identified and concluded that they fell short. Appx30-39.

would have combined elements from specific references *in the way the claimed invention does*," its appeal must fail. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1328 (Fed. Cir. 2012) (emphasis added).

### E. The Board's Claim 29 Finding Does Not Violate the APA

"In an inter partes review . . ., the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375 (Fed. Cir. 2016) (quoting 35 U.S.C. § 316(e)). "[T]hat burden never shifts to the patentee." *Id.* And, following institution, "the Board has an obligation to assess the question [of unpatentability] anew after trial based on the totality of the record." *Id.* at 1377.

In this case, the Board fulfilled its obligation and assessed Apple's theory of unpatentability for claim 29 anew based on the full record. Claim 29 requires that an "acoustic coprocessor," comprising a "calculating apparatus for calculating distances indicating a similarity between the at least one feature vector and at least one acoustic state of an acoustic model read from an acoustic model memory" (claim 10) is "fabricated on a single integrated circuit" (claim 29) with "at least one processor configured to . . . perform or initiate a speech recognition word search" (claim 28). As the Board observed, Apple "map[ped] the claimed 'acoustic

---

Apple no longer relies on the majority of these alleged motivations on appeal. *Compare* Appx30-39 (analyzing, for example, offloading and CPU HOLDs), with Apple Br. at 31-33, 38-41 (not discussing these supposed advantages).

coprocessor' to Smyth's classifier 34, which includes classifier processor 341 and state memory 342." Appx56. As a result, Apple's combination required it to prove that Smyth's classifier processor 341 and state memory 342 were "fabricated on a single integrated circuit" with still other components, including an additional processor, to meet the limitations of claim 29. Apple is thus incorrect that its combination for claim 29 and claim 1 "differ[ed] in *what* must be integrated." *Cf.* Apple Br. at 42.

The Board found that Apple fell short of meeting its burden to prove claim 29 was unpatentable for the same reasons it fell short with respect to claims 1, 2, 4, 6-9, and 24: "Petitioner has not shown that any of the integrated circuits cited in the Petition would have had enough memory to include both classifier processor 341 and state memory 342,"—including Boike's, Appx30—and "the Petition has not shown that fabricating an integrated circuit was within the level of ordinary skill." Appx56. The Board's conclusion is based on substantial evidence for the reasons already discussed.

Apple protests that it had no notice and opportunity to respond to the basis for the Board's decision because Zentian never identified claim 29 on its list of disputed claims. Apple Br. at 43. As this Court has previously held, however, "[Apple]'s argument that it lacked notice that the Board might address and reject

the obviousness arguments made in [Apple]'s own petition strains credulity."
*Fanduel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1340 (Fed. Cir. 2020).

As an initial matter, "[o]nce an issue is fairly presented in a petition and made the subject of dispute by the patent owner's response, the Board is free to make its own factual findings grounded in the evidence presented to it, without being bound to choose between the specific positions the parties advocated." *Corephotonics*, 84 F.4th at 1003. Here, the factual issues concerning the "single integrated circuit" limitation on which the Board based its claim 29 conclusion *were* disputed by Zentian in its Patent Owner Response and litigated by Apple.

But even if they were not, this Court in *Fanduel* rejected an identical argument by petitioner that the Board violated the Administrative Procedure Act when the Board found the petitioner failed to meet its burden for a reason the patent owner never raised. The *Fanduel* Court provided two reasons why this did not violate the APA. "First, the different standards of proof required to institute versus to invalidate permit the Board to adopt different views of the sufficiency of a petitioner's asserted obviousness arguments in its initial versus final decisions without first alerting the parties to that possibility." *Fanduel*, 966 F.3d at 1340. "But the main reason . . . for rejecting [petitioner's] APA challenge [is] that the burden of proving invalidity in an IPR remains on the petitioner throughout the proceeding." *Id.* at 1341 (citing 35 U.S.C. § 316(e)). In fact, a "patentee technically

has no 'burden' to do anything to defend the validity of its patent other than hold the patent challenger to its own burden of persuasion." *Id.* at 1342 (citation omitted). Thus, the *Fanduel* Court concluded, "a patent owner's response, alone, does not define the universe of issues the Board may address in its final written decision. Rather, in an IPR, 'the *petitioner's* contentions . . . define the scope of the litigation all the way from institution through to conclusion.'" *Id.*

Apple's reliance on *Apple Inc. v. Corephotonics, Ltd.* is unavailing. 81 F.4th 1353 (Fed. Cir. 2023). Although it is true that the Board's decision in that case turned on an issue that neither party raised, the Board also "failed to provide a reasoned explanation for why it found the [unraised] error meaningful." *Id.* at 1361. The Board's decision was vacated because it "based its decision on a typographical error without sufficiently explaining its significance, made *sua sponte* findings that lacked substantial evidence, and did not resolve the issue the parties presented." *Id.* at 1362. Here, in contrast, the Board extensively explained its findings based on the core issues litigated by the parties. It is not an APA violation that the Board also caught that Apple's combination for claim 29 was flawed for the same reasons litigated in the context of claims 1, 2, 4, 6-9, and 24.

"The APA does not require the Board to alert a petitioner that it may find the asserted theory of obviousness lacking in evidence before it actually does so in a final written decision. Nor is a petitioner entitled to a pre-decision opportunity to

disagree with the Board's assessment of its arguments." *Fanduel*, 966 F.3d at 1343. Rather, in every case "it remains the Board's essential function to make factual findings *based on its view of the record*." *Corephotonics*, 84 F.4th at 1003 (quoting *Fanduel*, 966 F.3d at 1344). That is what the Board did here for claim 29, and its decision should be affirmed.

## VII.  CONCLUSION

For the foregoing reasons, Zentian respectfully requests that the Court reject Apple's appeal and affirm the Board's final written decision.

April 28, 2025

Respectfully submitted,

*/s/ Kayvan B. Noroozi*
Nevin M. Gewertz
Katherine E. Rhoades
Jessica R. Bernhardt
BARTLIT BECK LLP
54 W. Hubbard, Suite 300
Chicago, IL 60654
(312) 494-4400
nevin.gewertz@bartlitbeck.com
katherine.rhoades@bartlitbeck.com
jessica.bernhardt@bartlitbeck.com

Kayvan B. Noroozi
NOROOZI PC
11601 Wilshire Blvd., Suite 2170
Los Angeles, CA 90025
(310) 975-7074
kayvan@noroozipc.com

*Counsel for Appellee Zentian Ltd.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION AND
## <u>TYPEFACE REQUIREMENTS</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 11,940 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 14-point, Times New Roman font.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2025, I electronically filed the foregoing

Zentian's Responsive Brief with the Clerk of the United States Court of Appeals

for the Federal Circuit using the CM/ECF system, which will send notice of such

filing to all registered CM/ECF users.


*/s/ Kayvan B. Noroozi*
Kayvan B. Noroozi

*Counsel for Appellee Zentian Ltd.*